## SUPERINTENDENT, MARYLAND STATE POLICE ET AL. *v.* STUART L. HENSCHEN

[No. 123, September Term, 1976.]

*Decided February 22, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Emory A. Plitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellants.

No brief filed on behalf of appellee.

ELDRIDGE, J., delivered the opinion of the Court.

We granted a writ of certiorari in this case to review a circuit court decree, rendered under the Public Information Act, Maryland Code (1957, 1975 Repl. Vol.), Art. 76A, §§ 1-5, ordering the Superintendent of the Maryland State Police to disclose to the plaintiff all records of an investigation which the State Police conducted in connection with the revocation of the plaintiff's permit to carry a handgun.

The plaintiff-appellee, Stuart L. Henschen, is a "railway patrolman" employed by the Baltimore & Ohio Railroad Company to guard and patrol property of the railroad in and around Baltimore, Maryland. Sometime prior to 1976, Mr. Henschen had been issued a permit to carry a handgun by the Maryland State Police, in accordance with the Maryland Handgun Act, Code (1957, 1976 Repl. Vol.), Art. 27, § 36E.

By letter dated January 30, 1976, the Superintendent of the Maryland State Police, pursuant to Art. 27, § 36E (f), revoked Mr. Henschen's handgun permit. The ground for the revocation, as revealed by the January 30 letter and by subsequent correspondence between Mr. Henschen's attorney and the Assistant Attorney General representing the Superintendent, was that Mr. Henschen allegedly "exhibited a propensity for violence or instability which may reasonably render his possession of a handgun a danger to himself and other law-abiding persons" because of his "excessive use of alcohol . . . on occasions when he was carrying a handgun." As authorized by Art. 27, § 36E (g), Mr. Henschen took an appeal from the Superintendent's action to the Handgun Permit Review Board, a state agency entirely separate from the Maryland State Police and established by the Legislature to review decisions of the State Police regarding handgun permits. As of the date the instant case was heard by us, Mr. Henschen's appeal had not been decided by the Handgun Permit Review Board.

After noting the appeal to the Handgun Permit Review Board, Mr. Henschen requested the Superintendent of the Maryland State Police to disclose the police file relating to his handgun permit and the evidence upon which the revocation was based. Mr. Henschen's attorney asserted in correspondence with the Superintendent's attorney that "there is no way I can prepare an appeal unless I know what the evidence against my client is." In response, the Attorney General's office, on behalf of the Superintendent, informed Mr. Henschen's attorney as follows:

> "The conclusion of the Superintendent was based upon the excessive use of alcohol by Stuart L.

Henschen on occasions when he was carrying a handgun. Evidence was received by the Superintendent regarding the excessive use of alcohol by Mr. Henschen from a number of sources considered reliable. These sources included:

"1. A police report of the Baltimore City Police Department, Complaint No. 1K31705 relating to an arrest of Stuart L. Henschen at 1:30 a.m. November 16, 1975. A copy of this two-page report is enclosed.

"2. A nine-page typewritten statement by Stuart Lee Henschen dated January 6, 1976, which Mr. Henschen furnished to Inspector M. F. Maloney, Baltimore & Ohio Railroad Company relating to the November 16, 1975 arrest of Mr. Henschen. A copy of this nine-page statement is enclosed.

"3. Information received from a number of present and former officers of the Baltimore & Ohio Railroad police."

Although copies of the police report and Mr. Henschen's statement, constituting the first two sources of information, were given to Mr. Henschen, the Superintendent declined to furnish the statements given to the State Police from the present and former officers of the Baltimore & Ohio Railroad police. The Superintendent relied upon the exception to the Maryland Public Information Act's disclosure requirement for "[r]ecords of investigations conducted by ... any ... police department or any investigatory files compiled for any other law-enforcement or prosecution purposes . . . ." Art. 76A, § 3 (b) (i).

Thereafter, Mr. Henschen instituted the present action in the Circuit Court for Baltimore County, seeking judicial review of the Superintendent's action and injunctive relief.[1]

---

1. The judicial review provision of the Public Information Act, Art. 76A, § 3 (e), states:

"Any person denied the right to inspect any record covered by this article may apply to the circuit court of the county where the record is found for any order directing the custodian of such record to show cause why he should not permit the inspection of such record."

In his bill of complaint, and at the subsequent hearing before the circuit court, Mr. Henschen asserted that the ability to carry a handgun was an indispensable part of his employment as a railway patrolman, that he had been suspended from his employment because of the revocation of his handgun permit, and that disclosure of the information received by the State Police from the present and former officers of the Baltimore & Ohio Railroad police concerning his alleged misuse of alcohol was necessary in order for him to prepare his appeal to the Handgun Permit Review Board. The Superintendent, on the other hand, reiterated his position that the information sought was within the Public Information Act's exception for records of investigations conducted by a police department.

At the conclusion of the hearing, the circuit court delivered an opinion holding that, for a record of a police investigation to come within the § 3 (b) (i) exemption in the Public Information Act, the investigatory record must have been compiled for a "law-enforcement or prosecution purpose" and that the investigation in this case, leading to the handgun permit revocation, did not meet these criteria. The circuit court in its decree ordered the Superintendent to provide Mr. Henschen with all evidence, including all written or recorded statements and the names and addresses of all witnesses, upon which the permit revocation was based. The Superintendent took an appeal to the Court of Special Appeals, and this Court issued a writ of certiorari before any decision by the Court of Special Appeals.

The pertinent provisions of the Public Information Act are as follows (Art. 76A, § 3):

> "(a) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one or more of the following grounds or as provided in subsection (b) or (c) of this section:

> \* \* \*

> "(b) The custodian may deny the right of inspection of the following records, unless otherwise

provided by law, on the ground that disclosure to the applicant would be contrary to the public interest;

(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, the Attorney General, police department or any investigatory files compiled for any other law-enforcement or prosecution purposes; * * *"

Before turning to the trial court's interpretation of § 3 (b) (i), however, it is desirable to emphasize just what is before us for decision in this case and what is not. This is an action under the Public Information Act and not a proceeding to review an administrative decision revoking a handgun permit. The Public Information Act provides that, subject to certain enumerated exceptions, "the custodian of any public records shall allow *any person* the right of inspection of such records . . . ." (Art. 76A, § 3 (a), emphasis supplied.) The general right of inspection is not limited to a "person aggrieved" or "person in interest." [2] The term "person" is broadly defined to include "any natural person, corporation, partnership, firm or association." (Art. 76A, § 1 (g).) Consequently, if the Superintendent's refusal to disclose in this case is not justified by one of the Public Information Act's exceptions, Mr. Henschen would be entitled to the information regardless of the pendency of an appeal to the Handgun Permit Review Board. Moreover, the applicability of the exception upon which the Superintendent relies in this case, the exception for records of investigations (§ 3 (b) (i)), does not at all depend upon whether the records would be available to a party in litigation with the agency.[3] Thus, whether or not due process considerations might make the

---

**2.** In some of the Act's exceptions, although not the one for records of investigation, a distinction is made between "any person" and a "person in interest."

**3.** Compare § 3 (b) (v), excepting from the mandatory disclosure requirement "[i]nteragency or intraagency memorandums or letters which would not be available by law to a private party in litigation with the agency."

records available to Mr. Henschen as a party in the administrative proceeding before the Handgun Permit Review Board does not determine whether they are available under the Public Information Act.[4]

On the other hand, a ruling that the records need not be disclosed under the Public Information Act, because of the exception in § 3 (b) (i), does not determine whether Mr. Henschen may be entitled to see them in connection with the Handgun Permit Review Board proceeding. A particular document may not be available to "any person" under the Public Information Act in light of that Act's exceptions, but procedural due process requirements may yet make that same document available to a party, or unavailable for use against a party, in an administrative or judicial proceeding. *See*, in this connection, *Rogers v. Radio Shack*, 271 Md. 126, 128-129, 314 A. 2d 113 (1974) (holding that an investigator's report could not, consistent with due process requirements, be used against a party to unemployment compensation proceedings where the party had no opportunity to examine the report, cross-examine the investigator or rebut the contents of the report).

The issue in this case, therefore, is not whether the records here involved may be used against Mr. Henschen in the Handgun Permit Review Board proceeding or may be available to him, in that proceeding. The issue is whether "any person" would be entitled to inspect the records under the Public Information Act in light of that Act's exception in § 3 (b) (i) for "records of investigations."

The relevant language of the § 3 (b) (i) exception is: "Records of investigations conducted by . . . any sheriff, . . . police department or any investigatory files compiled for any other law-enforcement or prosecution purposes . . . ." As

---

4. However, if some other statutory provision were to make these records available to Mr. Henschen, the exceptions in §§ 3 (b) (i) through 3 (b) (v) of the Public Information Act could not be invoked by the Superintendent. The discretion of a custodian of public records to deny inspection on any of the five grounds set forth in § 3 (b) is limited by the language, "unless otherwise provided by law . . . ." No provision of law other than the Public Information Act has been relied on by Mr. Henschen in this case.

previously mentioned, the circuit court held that the records in this case were not within the exception because, in the court's view, they were not compiled for "law-enforcement or prosecution purposes." However, as we read the statute, when the documents in question constitute records of an investigation by a police department (or sheriff's office or any of the other law enforcement agencies specifically listed in § 3 (b) (i)), there need not be an actual showing that the records were compiled for law enforcement or prosecution purposes for the exception to be applicable.

Section 3 (b) (i) is in the disjunctive, excepting records of investigation by the enumerated types of law enforcement agencies *or* investigatory files compiled for any other law enforcement or prosecution purposes. The statutory provision exempts from the mandatory disclosure requirement two categories of documents: (1) investigatory records of certain named law enforcement agencies; (2) investigatory records of other governmental agencies which were compiled for law enforcement or prosecution purposes. It is only with respect to the second category that there is an express requirement that the records be compiled for law enforcement or prosecution purposes. The statutory language, and particularly the use of the word *other* before the phrase "law-enforcement or prosecution purposes," suggests that the Legislature believed that investigatory records of one of the enumerated law enforcement agencies were presumptively for law enforcement or prosecution purposes, but that investigatory records compiled by other agencies might or might not be for such purposes.

Since it is undisputed that the documents sought in this case are records of an investigation conducted by a police department, they fall within the § 3 (b) (i) exception. There was no necessity for the Superintendent to have demonstrated in court that the records were compiled for law enforcement or prosecution purposes.[5]

*Judgment reversed.*
*Appellee to pay costs.*

---

5. In light of our construction of the statute, we are, of course, not

---

presented with the question of whether the investigatory records in this case would be deemed by us to have been "compiled for any . . . law-enforcement or prosecution purposes" within the meaning of the second part of § 3 (b) (i). In this connection, however, *see* Art. 27, § 36E (k), making it a misdemeanor punishable by a $1,000 fine or up to one year imprisonment or both "for a person to whom a permit has been issued . . . to carry, wear, or transport a handgun while he is under the influence of alcohol . . . ."

It is also noteworthy that the phrase "investigatory files compiled for law enforcement purposes" also appears in one of the exemptions in the federal Freedom of Information Act, 5 U.S.C. 552 (b) (7). The federal courts have given that language a somewhat broader interpretation than did the circuit court in the instant case. *See, e.g.,* Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore, 508 F. 2d 945 (4th Cir. 1974); Wellman Industries, Inc. v. NLRB, 490 F. 2d 427, 430-431 (4th Cir.), *cert. denied,* 419 U. S. 834, 95 S. Ct. 61, 42 L.Ed.2d 61 (1974); Evans v. Department of Transportation of United States, 446 F. 2d 821 (5th Cir. 1971), *cert. denied,* 405 U. S. 918, 92 S. Ct. 944, 30 L.Ed.2d 788 (1972); Pilar v. SS Hess Petrol, 55 F.R.D. 159 (D. Md. 1972); Benson v. United States, 309 F. Supp. 1144 (D. Neb. 1970). *See also* NLRB v. Sears, Roebuck & Co., 421 U. S. 132, 162-165, 95 S. Ct. 1504, 1522-1523, 44 L.Ed.2d 29 (1975).