737 A.2d 592

**OFFICE OF the STATE PROSECUTOR**

v.

**JUDICIAL WATCH, INC.**

**No. 9, Sept. Term, 1999.**

Court of Appeals of Maryland.

Sept. 21, 1999.

120

Carmen M. Shepard, Deputy Atty. Gen. (J. Joseph Curran, Atty. Gen. of Maryland, on brief), Baltimore, for appellant.

Larry Klayman (Paul J. Orfanedes, Judicial Watch, Inc., on brief), Washington, DC, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (Retired, specially assigned), JJ.

BELL, Chief Judge.

In this case, we are called upon to determine whether the Circuit Court for Baltimore County erred by ordering the State Prosecutor to submit a "Vaughn"[1] index of documents, requested pursuant to the Maryland Public Information Act, where those documents are related to an ongoing investigation being conducted by a grand jury convened by another circuit court. We shall hold that it did and, therefore, reverse the judgment ordering the disclosure.

## I.

In February 1998, at the request of the State's Attorney for Howard County pursuant to Maryland Code (1957, 1995 Repl. Vol., 1997 Supp.) § 9–1203(b) of the State Government Article,[2] Stephen Montanarelli, the State Prosecutor, agreed to

---

**1.** The reference is to *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), in which the Circuit Court of Appeals for the District of Columbia required the responding party to provide a list of documents in possession, setting forth the date, author, general subject matter and claim of privilege for each document claimed to be exempt from discovery. *See also, Lewis v. I.R.S.,* 823 F.2d 375, 377 n. 3 (9th Cir.1987) ("A Vaughn index is a system of itemizing and indexing that correlates each of the government's justifications for its refusal to disclose the documents with the actual portion of the documents at issue.").

**2.** Maryland Code (1957, 1995 Repl.Vol., 1997 Supp.) § 9–1203(b) provides:

"At the request of either the Governor, Attorney General, General Assembly or State's Attorney, the State Prosecutor may investigate criminal activity that is conducted or committed partly in this State

investigate the highly publicized tape recordings made by Linda Tripp of telephone conversations she had with Monica Lewinsky. At that time, the State Prosecutor deferred his investigation pending resolution of a separate, federal, investigation being conducted by Kenneth Starr through the Office of Independent Counsel, in which the tapes played an important role. On July 7, 1998, the Office of the State Prosecutor, ("OSP" or "the State") announced the initiation of a grand jury investigation into alleged violations by Ms. Tripp, of the State Wiretap and Electronic Eavesdropping Statute,[3] Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.) § 10–402 of the Courts and Judicial Proceedings Article. The next day, the appellee, Judicial Watch, Inc. ("Judicial Watch"), filed, with the OSP, a request pursuant to the State's Public Information Act ("PIA"), Maryland Code (1984, 1995 Repl.Vol., 1997 Supp.) §§ 10–611, *et seq.*, of the State Government Article for all documents and things related to, among others, Linda Tripp, Lucianne Goldberg, Monica Lewinsky, Kenneth Starr, and the White House. Responding to that request, the State Prosecutor denied having documents or other material concerning such persons and entities named in Judicial Watch's PIA request and refused to disclose any documents or other information the OSP might have concerning Ms. Tripp, Ms. Goldberg and Ms. Lewinsky. The grounds he offered to

---

and partly in another jurisdiction, or that is conducted or committed in more than one political subdivision of the State."

**3.** Md.Code (1974, 1995 Repl.Vol., 1997 Supp.) § 10–402 of the Courts & Judicial Proceedings Article provides, in pertinent part:

"(a) *Unlawful acts.–* Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

"(1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

"(2) Wilfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subtitle; or

"(3) Wilfully use, or endeavor to use, the contents of any wire, oral, or electronic communication in violation of this subtitle."

support the decision were: 1) Judicial Watch is not a "person in interest" and 2) the records sought are part of an investigatory file compiled for law enforcement or prosecution purposes.

Following the denial of its request, the appellee filed an action in the Circuit Court for Baltimore County, in which it alleged that the OSP's non-production violated the PIA. The OSP filed a motion to dismiss, or in the alternative for summary judgment, arguing that the documents the appellee sought were part of a confidential investigatory file compiled for the purpose of conducting an active criminal grand jury investigation. The motion was supported by affidavit of the State Prosecutor. The appellee countered by pointing out that the OSP had previously made public at least some documents responsive to its request and that its request was made only one day after the announcement of the initiation of the investigation. It then argued from that premise that the documents could not reveal or implicate confidential information about an investigation that had begun only one day earlier. Not conceding the point, the OSP produced the already released documents. Those documents, it explained, related solely to the decision to undertake the investigation and, thus, did not compromise the ongoing investigation.

The circuit court ordered the OSP to submit to the Court and to the appellee, under seal, a "Vaughn" index that "word for word, paper for paper" identified all documents that are responsive to the PIA request. It also instructed the OSP to describe each document with the same specificity required by discovery orders in civil cases. The OSP filed a motion for reconsideration or, in the alternative, for a stay pending appeal, supported by affidavit, in which it argued that all of the withheld documents [4] pertained to the ongoing grand jury

---

4. In the affidavit, the OSP stated with respect to the withheld documents:

"The documents sought fall into several categories: investigative reports; physical evidence, including documentary evidence; witness statements; memoranda of interview[s] with third parties; attorney

investigation. It argued further that, in Maryland, custodians of public records need not make an individualized showing when claiming exemption, rather it is sufficient to identify general categories of documents and demonstrate how they would interfere with an ongoing criminal investigation.

Both the motion for reconsideration and the request for stay were denied, the court reasoning:

"This court has no qualms about allowing the State Prosecutor identifying what he wants protected in a "category." The law tells me what to do. What he cannot do is generalize and categorize under the bald allegation that "I say it should be protected." For example, an affidavit by the State Prosecutor that I obtained eight (8) documents from William Jefferson Clinton, pursuant to the subpoena I issued on ?/?/? after the investigation began, means the eight (8) documents may be categorized as something obtained pursuant to an investigation taken. An affidavit that I have eight (8) documents, the revelation on which, may hinder future prosecution, is not acceptable as allowing the court to make any decisions as to whether there is a statutory protection against disclosure.

"Nothing more is asked of the State Prosecutor here than to give the court the basis upon which confidentiality is claimed. As in civil cases, the earmarking procedure set out in *Kelch v. Mass Transit Admin.*, 287 Md. 223, 441 [411] A.2d 449 (1980) and Discovery Guideline No. 6 is needed so this judge knows what the parties are talking about."

The court ordered the OSP, under penalty of contempt, to produce the ordered index by a date and time certain. It subsequently also amended the order to require the OSP to state "[t]he subject matter of the testimony (i.e., knowledge of whether taping was a violation of the law)" presented to the grand jury. The OSP timely noted its appeal to the Court of Special Appeals. It also sought a stay of the circuit court

---

and investigators' work papers; correspondence pertaining to requests for information; and internal memoranda reflecting the scope and duration of the investigation."

order, which the Court of Special Appeals granted. This Court, on its own motion, issued a writ of certiorari prior to any other proceedings in the intermediate appellate court and ordered that the stay that court entered continue in effect.

## II.

■ We granted certiorari to consider the propriety of the circuit court's order to the OSP for the production and submission of a Vaughn index. That order, which is at the center of this case, is not the *final* order sought by the appellee—to disclose all documents requested by Judicial Watch, pursuant to its PIA request. Instead, this case challenges the circuit court's ordering disclosure of information designed to assist it in determining that ultimate issue, *i.e.* a list containing the date, author, general subject matter and claim of privilege for each document the OSP claimed to be exempt from discovery. Consequently, the order under review is an interlocutory order. Thus, the first question this review presents is whether the order is an appealable interlocutory order. Although the appellee did not file a motion challenging appealability, having contented itself to expressing, in its brief, "serious doubt" as to whether the order was properly appealable, the issue of appealability is a threshold one, which may be raised at any time by a party, even on appeal, and, indeed, which must be addressed, and will be, by the Court on its own motion, whether raised or not.

■ Recognizing that "[d]ecisions involving the creation of a Vaughn index usually arise in civil cases as interlocutory rulings that generally are not final for purposes of Md. Cts. & Jud. Proc.Code Ann. § 12–301,[5]" the OSP nevertheless con-

---

5. Maryland Code (1974, 1995 Repl.Vol.) § 12–301 of the Courts & Judicial Proceedings Article provides that "[A] party may appeal from a final judgment entered in a civil ... case," whether entered in the exercise of original, special, limited, or statutory authority, unless "expressly denied by law." We noted in *Baltimore City Dept. of Soc. Services v. Stein*, 328 Md. 1, 8, 612 A.2d 880, 883 (1992), citing *Cant v. Bartlett*, 292 Md. 611, 614, 440 A.2d 388, 389 (1982); *Stewart v. State*, 282 Md. 557, 561, 386 A.2d 1206, 1208 (1978); *Jolley v. State*, 282 Md.

tends that the circuit court's order is properly appealable both under the collateral order doctrine, "which treats as final and appealable a limited class of orders which do not terminate litigation in the trial court," [6] and under this Court's decision in *Baltimore City Department of Social Services v. Stein*, 328 Md. 1, 612 A.2d 880 (1992). As we have seen, the appellee disputes the applicability of both. We agree with the appellee with respect to the inapplicability of the collateral order doctrine—the order under review "is inherently intertwined with the merits of the action," hence, does not conclusively determine the disputed issue, the propriety of the withholding of the documents responsive to the appellee's PIA request. Although we believe that the *Stein* exception is somewhat different, we have concluded that it too is inapposite. The threshold distinction between this case and *Stein* is clear. *Stein* was a non-party to the underlying action, as to whom the discovery disclosure order had all of the attributes of finality recognized by this Court. It settled the rights of the appellant and appellee in the records sought to be discovered, thereby, concluding that phase of the action. *Stein*, 328 Md. at 13, 612 A.2d at 885–86. Here, on the other hand, the OSP is a party, indeed, the critical party, in the underlying litigation and the order under review is an interlocutory order; it does not purport to resolve and, by definition, could not resolve, the underlying action.

 Nevertheless, we hold that the trial court's order is an appealable order. Section 10–623 of the PIA is concerned

---

353, 356, 384 A.2d 91, 93 (1978), that its purpose is to discourage the piecemeal appeal of issues generated at various stages of the litigation.

6. We have recognized that "[t]o fall within the collateral order exception, the " 'order must [(1)] conclusively determine the disputed question, [(2)] resolve an important issue [, (3) be] completely separate from the merits of the action, and [(4)] be effectively unreviewable on appeal from a final judgment.' " *Stein*, 328 Md. at 10–11, 612 A.2d at 884–85, quoting, *inter alia*, *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536–37 (1949), the seminal case on the collateral order doctrine."

with the governmental denial of inspection requests. Subsection (c)(3) provides:

"The court may:

"(i) enjoin the State, a political subdivision, or a unit, official, or employee of the State or of a political subdivision from withholding the public record;

"(ii) pass an order for the production of the public record that was withheld from the complainant; and

"(iii) for noncompliance with the order, punish the responsible employee for contempt."

Thus, an order under this Act is an injunction,[7] the noncompliance with which is punishable by contempt. Maryland Code (1974, 1995 Repl.Vol.) § 12–303 of the Courts and Judicial Proceedings Article, addresses "[a]ppeals from orders not final." As relevant to the case *sub judice,* it provides:

"A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \* \*

"(3) An order:

"(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause."

Despite the circuit court requiring the index to be in the detail required of discovery deadlines, the order in this case is not a discovery order. While it may resemble a discovery order, it was issued pursuant to the other party's request and in aid of elucidating the issues preliminary to a decision on the merits, the order in this case is an injunctive order, requiring disclosure to the court of information the court found to be necessary so that it "knows what the parties are talking about." Indeed, it has been legislatively determined to be an injunction and to be directly enforceable by contempt. More-

---

**7.** An "injunction" is "an order mandating or prohibiting a specified act." Maryland Rule 15–501.

over, the court's order in this case was under penalty of contempt. In addition, the information ordered disclosed is, the OSP claims, protected by the Maryland grand jury laws.

██ The PIA requires a custodian of records to deny inspection of a public record if it is privileged or confidential, by law, or if a state statute or the Rules adopted by the Court of Appeals prohibit it. § 10–615.[8] Moreover, "[s]ecrecy is the lifeblood of the grand jury" and is critical to its proper functioning. *In re Criminal Investigation No. 437,* 316 Md. 66, 76, 557 A.2d 235, 240 (1989). *See also, Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156, 164–65 (1979). Consequently, the harm against which protection is sought will have occurred the moment that the OSP submits the Vaughn index. Accordingly, we conclude that the circuit court order is immediately appealable.

## III.

The OSP offers two bases on which it contends the circuit court's order should be reversed: it contravenes Maryland Rule 4–642 [9] and it interferes with an ongoing criminal investi-

---

8. That provision provides in its entirety:

"A custodian shall deny inspection of a public record or any part of a public record if:
 "(1) by law, the public record is privileged or confidential; or
 "(2) the inspection would be contrary to:
 "(i) a State statute;
 "(ii) a federal statute or a regulation that is issued under the statute and has the force of law;
 "(iii) the rules adopted by the Court of Appeals; or
 "(iv) an order of a court of record."

9. Maryland Rule 4–642 provides:

 "(a) *Court records.* Files and records of the court pertaining to criminal investigations shall be sealed and shall be open to inspection only by order of the court.
 "(b) *Hearings.* Hearings before the court relating to the conduct of criminal investigations shall be on the record and shall be conducted out of the presence of all persons except those whose presence is necessary.

gation. As to the former, it argues that Rule 4–642(c) protects grand jury secrecy by prohibiting, unless permitted by law without necessity of court authorization, disclosure of matters occurring before the grand jury except as ordered by the court where the grand jury is convened after a hearing. Because the grand jury in this case was convened in Howard County, the OSP asserts, the Circuit Court for Howard County is the only circuit court with authority to order disclosure of matters occurring before its grand jury. The PIA, it continues, does not displace the provisions of § 4–642; consequently, the circuit court's order was error.

Alternatively, the OSP argues that "even if the Public Information Act were applicable to disclosure of grand jury materials, it provides no basis for the compelled production of a Vaughn index that, by listing each document the State Prosecutor seeks to withhold, intrudes on an ongoing criminal investigation." Since the PIA does not require disclosure of investigatory records compiled during pending criminal proceedings, and under Maryland law, the State is not required to make a particularized showing that the investigatory reports would interfere with that pending proceeding, it contends that "[t]he Baltimore County Circuit Court's requirement that the State Prosecutor produce a detailed Vaughn index sweeps aside these well settled principles because it requires precisely the showing of particularized interference that this Court and others have consistently held need not be made in investigatory record exemption cases such as this."

---

"(c) *Motion for disclosure.* Unless disclosure of matters occurring before the grand jury is permitted by law without court authorization, a motion for disclosure of such matters shall be filed in the circuit court where the grand jury convened. If the moving party is a State's Attorney who is seeking disclosure for enforcement of the criminal law of a state or the criminal law of the United States, the hearing shall be ex parte. In all other cases, the moving party shall serve a copy of the motion upon the State's Attorney, the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and such other persons as the court may direct. The court shall conduct a hearing if requested within 15 days after service of the motion."

The appellee counters that the issue "is not about breaching the confidentiality of grand jury proceedings. Rather, it is about how the Circuit Court, indeed how any court, can determine whether the withholding of documents pursuant to Maryland's Public Information Act is or is not lawful." Thus, its argument focuses on the PIA and its application, without even a single mention of Rule 4–262. The appellee asserts that the appellant misapplies cases interpreting the Public Information Act. Relying on *Fioretti v. Maryland State Board of Dental Examiners*, 351 Md. 66, 78, 716 A.2d 258, 264 (1998), the appellee contends that, when confronted with a PIA request, a state agency is required to: 1) identify each withheld document sufficiently, and 2) demonstrate that public release of the documents would interfere with a pending criminal investigation. Judicial Watch argues that the broad categorization of the documents offered by the OSP is vague, and does not satisfy the particularity requirement of *Fioretti*.

## IV.

Pursuant to § 10–615 of the PIA, as we have seen, the custodian must deny inspection of public records that are, by law, privileged or confidential or when inspection would be contrary to a State statute or rules adopted by the Court of Appeals. It is well settled that secrecy is essential to the proper workings of the grand jury system. *See In re Criminal Investigation No. 437*, 316 Md. at 76, 557 A.2d at 240 ("Secrecy is the lifeblood of the grand jury."); *Coblentz v. State*, 164 Md. 558, 566–67, 166 A. 45, 49 (1933)(Grand jury secrecy "is an inflexible requirement that [the grand jury's] investigations shall be carried on secretly and free from outside interference or influence; and great care is taken that they shall be so carried on."); *In re Grand Jury Report*, 152 Md. 616, 631, 137 A. 370, 375–76 (1927). *See also In re Criminal Investigation No. 51,843*, 119 Md.App. 112, 117, 704 A.2d 464, 467, *cert. denied*, 349 Md. 235, 707 A.2d 1329 (1998), in which the intermediate appellate court, quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156, 165 (1979), stated, on the subject:

"First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."

In *Coblentz*, we further explained:

"Freedom of inquiry is to be preserved, and at the same time individuals whose conduct may be investigated, but against whom no indictment may be found, are to be protected from disrepute, and all individuals are to be protected from one-sided presentations of unfavorable evidence, without opportunity to reply, before any one present unnecessarily."

164 Md. at 566, 166 A. at 49. It is for this reason that we require grand jurors [10] and stenographers [11] to take an oath of secrecy.

█ This Court has promulgated rules governing criminal investigations, *i.e.*, "inquiries into alleged criminal activities conducted by a grand jury or by a State's Attorney pursuant to Article 10A, § 39A." Maryland Rule 4–641. Maryland Rule 4–642 addresses the secrecy of such investigations and, indeed, provides the exclusive vehicle for obtaining disclosure of grand

---

**10.** "All persons who have been selected for grand jury service in the circuit court of any county in the State shall take an oath of secrecy." Md.Code (1973, 1984 Repl.Vol.) 8–213(b) of the Courts and Judicial Proceedings Article.

**11.** A stenographer appointed to take grand jury testimony, "shall take and subscribe an oath that he will keep secret all matters and things occurring before the grand jury." *Id.* 2–503(b)(1)

jury records and documents, which, at times, is necessary to promote justice. *In re Criminal Investigation No. 437,* 316 Md. at 79, 557 A.2d at 242. It provides:

"(a) *Court records.*—Files and records of the court pertaining to criminal investigations shall be sealed and shall be open to inspection only by order of the court.

"(b) *Hearings.*—Hearings before the court relating to the conduct of criminal investigations shall be on the record and shall be conducted out of the presence of all persons except those whose presence is necessary.

"(c) *Motion for disclosure.*—Unless disclosure of matters occurring before the grand jury is permitted by law without court authorization, a motion for disclosure of such matters shall be filed in the circuit court where the grand jury convened. If the moving party is a State's Attorney who is seeking disclosure for enforcement of the criminal law of a state or the criminal law of the United States, the hearing shall be ex parte. In all other cases, the moving party shall serve a copy of the motion upon the State's Attorney, the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and such other persons as the court may direct. The court shall conduct a hearing if requested within 15 days after service of the motion."

The rule is clear, inspection of grand jury files and records, not otherwise allowed by law without one, is permitted only upon order of court, after hearing on a motion filed in the circuit court where the grand jury is convened. Maryland Rule 4–462(a) and (c). Underscoring the confidentiality and secrecy of such proceedings, subsection (b) makes clear that, although required to be conducted on the record, hearings related to grand jury disclosures, as is true of those involving all criminal investigations, are required to exclude all persons whose presence is not necessary.

 The proceedings in this case were pursuant to the PIA, rather than the grand jury disclosure rule. Moreover, they were brought in a circuit court other than the one in which the grand jury, whose files and records were sought, was con-

vened. By proceeding via the PIA, rather than pursuant to the grand jury disclosure rule, an end run around grand jury secrecy has been attempted, which if successful, will undermine that process. But the PIA does not sanction this proceeding. In fact, § 10–615 is clear that effect is to be given to court rules when to allow inspection of public records would contravene those rules. That is the case here. Thus, as in the case of the Federal FOIA, *see Fiumara v. Higgins*, 572 F.Supp. 1093, 1103 (D.N.H.1983); *Manchester v. Drug Enforcement Admin.*, 823 F.Supp. 1259, 1268 (E.D.Pa.1993), the PIA does not trump or override the traditional rule of grand jury secrecy.

It follows that neither Baltimore County was the proper venue, nor the circuit court of that county the proper court to act in this case. In short, that court acted contrary to Rule 4–462 in entertaining and deciding this action. The most it should have done was transfer the matter to the Circuit Court for Howard County pursuant to Maryland Rule 2–327.[12]

## V.

In the event that the Circuit Court for Baltimore County exercises its discretion to transfer the matter to Howard County, we offer the following for guidance on remand. To be sure, Maryland Rule 4–462 does not contain, or purport to prescribe a standard for trial courts to use when deciding grand jury disclosure issues. This Court has addressed that issue, however, and determined that "when a court order for disclosure is requested, there must be a strong showing of a 'particularized need' before disclosure is permitted." *In re Criminal Investigation No. 437*, 316 Md. at 82–83, 557 A.2d at 243. As to the nature of the "particularized need," we clarified:

---

12. Maryland Rule 2–327, as relevant, provides:

"(b) Improper Venue. If a court sustains a defense of improper venue but determines that in the interest of justice the action should not be dismissed, it may transfer the action to any county in which it could have been brought."

"Parties seeking a court order for disclosure under Md. Rule 4–642(c) must show that:

"1) the material they seek is needed to avoid a possible injustice; and

"2) the need for disclosure is greater than the need for continued secrecy; and

"3) their request is structured to cover only material so needed."

*Id.* at 85, 557 A.2d at 244.

We have previously noted that this action has been brought under the PIA and not the grand jury disclosure rule and that it was brought in a court other than the one in which the records sought are located. Finally, the proceedings were brought, and are being prosecuted, by an organization that is not a person in interest under the PIA, that is unrelated to any party in the criminal investigation, and that is not a governmental or law enforcement entity. Therefore, none of the showings required for disclosure of grand jury files and records have been made or even attempted to be made, nor, under the circumstances, could they have been.

To the extent that any of the records sought do not constitute records pertaining to the grand jury investigation or may be determined to be properly the subject of a PIA request, different considerations apply. They, too, will be addressed.

It is the policy of this State that its citizens have "access to information about the affairs of government and the official acts of public officials and employees." § 10–612(a). Indeed, so strong is this policy that the General Assembly has declared that, unless an unwarranted invasion of the privacy of a person in interest would result, "this subtitle shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection." § 10–612(b). Thus, "[e]xcept as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." § 10–613(a). There are exceptions to this rule, however. One, as we have seen, is

prescribed in § 10–615, requiring denial of inspection of a public record when, by law, it is privileged or confidential or when to allow the inspection would be contrary to a State statute or rules adopted by the Court of Appeals. Another is contained in § 10–618, which, as relevant to the case *sub judice*, provides:

"(a) *In general.* Unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part, as provided in this section.

\* \* \* \*

"(f) *Investigations.*—

"(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

"(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

"(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

"(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

"(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

"(i) interfere with a valid and proper law enforcement proceeding;

"(ii) deprive another person of a right to a fair trial or an impartial adjudication;

"(iii) constitute an unwarranted invasion of personal privacy;

"(iv) disclose the identity of a confidential source;

"(v) disclose an investigative technique or procedure;

"(vi) prejudice an investigation; or

"(vii) endanger the life or physical safety of an individual."

Under this provision, a custodian is permitted to deny inspection of records of investigations conducted by certain enumerated agencies. § 10–618(f)(1). There is no provision, certainly not an express one, requiring the custodian to give any explanation for the denial or, in some way, to offer a justification for the decision. Section (f)(1) does refer to Section (f)(2), however, which places restrictions on the custodian's right to deny inspection to a person in interest, *i.e.* "a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit." § 10–611(e).[13] When a person in interest is involved, Section (f)(2) contemplates inspection unless disclosure would have the enumerated consequences; hence, it implicitly requires, in that circumstance, some explanation or justification for the decision to deny inspection.

This Court has addressed the nature of that explanation or justification. In *Faulk v. State's Attorney*, 299 Md. 493, 474 A.2d 880 (1984), the issue was "whether under § 3(b)(i)(A),[14]

---

**13.** Section 10–611(e) defines "person in interest" to mean:

"(1) a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit;

"(2) if the person has a legal disability, the parent or legal representative of the person; or

"(3) as to requests for correction of certificates of death under § 5–310(d)(2) of the Health—General Article, the spouse, adult child, parent, adult sibling, grandparent, or guardian of the person of the deceased at the time of the deceased's death."

**14.** In effect at that time was Maryland Code (1957, 1980 Repl.Vol. & 1983 Cum.Supp.), Art. 76A, § 3(b)(i). It provided:

"The custodian may deny the right of inspection of the following records or appropriate portions thereof, unless otherwise provided by law, if disclosure to the applicant would be contrary to the public interest:

"(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, State's attorney, the Attorney General, police department, or any investigatory files compiled for any other law-enforcement,

in order to deny access to investigatory police reports to a defendant in a pending criminal proceeding, the State must present particularized evidence showing that the disclosure of such reports would interfere with the pending criminal proceedings or whether under such circumstances a generic determination of interference is appropriate." *Id.* at 495, 474 A.2d at 881. We held that:

"the State is not required to make a particularized showing that the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant in a pending criminal proceeding would interfere with that pending criminal proceeding. Rather, a generic determination of interference can be made whenever a defendant in a pending criminal proceeding seeks access to investigatory police reports relating to that pending criminal proceeding. In short, the Maryland Public Information Act does not require the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant in a pending criminal proceeding."

*Id.* at 511, 474 A.2d at 889–90. Underlying our reasoning was the conclusion that "the General Assembly did not intend to preclude generic determinations of interference when the circumstances were such that disclosure of the requested materials necessarily 'would interfere' with law-enforcement proceedings." *Id.* at 508, 474 A.2d at 888. That conclusion was compelled by the fact that "[t]here [was] nothing in the language or the legislative history of § 3(b)(i)(A) to indicate that the General Assembly intended to require a case-by-case showing that disclosure would reveal the State's case prematurely, result in delay or otherwise create a demonstrable

---

judicial, correctional, or prosecution purposes, but the right of a person in interest to inspect the records may be denied only to the extent that the production of them would (A) interfere with valid and proper law-enforcement proceedings, (B) deprive another person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source, (E) disclose investigative techniques and procedures, (F) prejudice any investigation, or (G) endanger the life or physical safety of any person."

interference with the particular case, and that generic determinations of interference could never be made." *Id.*

This holding was recently confirmed, albeit under somewhat different circumstances, in *Fioretti v. Maryland State Bd. Of Dental Examiners,* 351 Md. 66, 89, 716 A.2d 258, 270 (1998), where, after reviewing *Faulk* and *Superintendent v. Henschen,* 279 Md. 468, 369 A.2d 558 (1977), on which *Faulk* relied, the Court stated that "the Legislature had given no indication that it required the enumerated agencies to make a document-by-document determination that disclosure of the otherwise public documents would create an interference with the particular case." 351 Md. at 89, 716 A.2d at 270. Moreover, this holding is inconsistent with the particularized showing a Vaughn index requires, but consistent with the holdings of federal courts construing the exemption under review in the case *sub judice,* known in the federal courts as Exemption 7.

 The purpose of the PIA, enacted by Chapter 698 of the Laws of 1970, is virtually identical to that of the earlier enacted federal statute, the Freedom Of Information Act. "Where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive." *Faulk,* 299 Md. at 506, 474 A.2d at 887, and cases therein cited. *See also Fioretti,* 351 Md. at 75–76, 716 A.2d at 263. In *Crancer v. Department of Justice,* 999 F.2d 1302, 1309 (8th Cir.1993) (en banc), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1186, 127 L.Ed.2d 537 (1994), the court vacated a trial court order requiring submission of a Vaughn index, concluding that such an index "appends an additional requirement to Exemption 7(A) that exceeds the bounds of the statute as interpreted by the Supreme Court and this court." It held: "Exemption 7(A) does not require that the government produce a fact-specific, document specific, Vaughn index in order to satisfy that burden. The contents of the requested documents are irrelevant. It is the particular categories of documents, and the likelihood that the release of documents within those categories could reasonably be expected to threaten enforcement proceedings, on which the court must focus." *Id. See also,*

*Church of Scientology of California v. I.R.S.,* 792 F.2d 146, 152 (D.C.Cir.1986) ("When, however, a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a Vaughn index is futile."); *Lewis v. I.R.S.,* 823 F.2d 375, 380 (9th Cir.1987) ("[A] Vaughn index of the documents here would defeat the purpose of Exemption 7(A). It would aid [the appellant] in discovering the exact nature of the documents supporting the government's case against him earlier than he otherwise would or should.") *See also, Solar Sources, Inc. v. U.S.,* 142 F.3d 1033, 1040 (7th Cir.1998)(recognizing that "in many Exemption 7(A) cases, provision of a Vaughn index would itself disclose much of the information that the Exemption is intended to protect."); *Curran v. Department of Justice,* 813 F.2d 473, 475 (1st Cir.1987) ("Provision of the detail which a satisfactory Vaughn index entails would itself probably breach the dike.").

 The appellee is not a person in interest and, thus, is not entitled to the more favorable treatment accorded such persons. No matter, as we have seen, it fares no better even if it were.

The appellee argues, "judicial review of an agency's attempted withholding of [documents pursuant to a PIA exemption] is a two part inquiry. First, the documents must be properly identified. Then, it must be shown that public release of the documents would interfere with a pending criminal investigation or produce enumerated harm[.]" It relies on *Fioretti.* While, there, Judge Cathell, for the Court, did make both points, it was in an entirely different context and, thus, does not support the appellee.

 There is a distinction between records of investigations conducted by agencies enumerated in the exception and investigatory files compiled for any other law enforcement or prosecution purposes by non-enumerated agencies. *Henschen,* 279 Md. at 474–75, 369 A.2d at 562.

"Section 3 (b)(i) is in the disjunctive, excepting records of investigation by the enumerated types of law enforcement

agencies or investigatory files compiled for any other law enforcement or prosecution purposes. The statutory provision exempts from the mandatory disclosure requirement two categories of documents: (1) investigatory records of certain named law enforcement agencies; (2) investigatory records of other governmental agencies which were compiled for law enforcement or prosecution purposes. It is only with respect to the second category that there is an express requirement that the records be compiled for law enforcement or prosecution purposes. The statutory language, and particularly the use of the word other before the phrase "law-enforcement or prosecution purposes," suggests that the Legislature believed that investigatory records of one of the enumerated law enforcement agencies were presumptively for law enforcement or prosecution purposes, but that investigatory records compiled by other agencies might or might not be for such purposes."

*Id.* at 475, 369 A.2d at 562.

Thus, as to the former, there need not be an actual showing that the records were compiled for law enforcement or prosecution purposes for the exception to be applicable, that will be presumed. *Fioretti,* 351 Md. at 78–79, 716 A.2d at 264–65.

In *Fioretti,* the Board of Dental Examiners was not an enumerated agency that is presumed to be conducting criminal investigations. Therefore, we held, it had the burden of demonstrating that it was conducting an investigation. 351 Md. at 83, 716 A.2d at 267. After holding further "that in the first instance, appellee failed to meet its burden of demonstrating that the records at issue were investigatory files compiled for a law enforcement purpose so that the exemption at issue would apply," *id.* at 86, 716 A.2d at 268, we also determined that the Board had to show that disclosure of the records would have prejudiced its investigation. *Id.* In short, the discussion in that case was dictated by its context, namely that the applicable agency was not an enumerated one. This stands in stark contrast to the instant case.

To be sure, the OSP is not enumerated in § 10–618(f). Nevertheless, it is patent that it was in the process of conducting a criminal investigation in the same manner and to the same extent that the State's Attorney for Howard County would have been. The OSP is authorized to conduct investigations at the request of a State's Attorney, § 9–1203(b), and, indeed, in this case, that is precisely what it was doing. Moreover, "[i]n the investigation of any case as provided in § 9–1203 of this subtitle or the prosecution of any case as provided in § 9–1205 of this subtitle, the State Prosecutor has all the powers and duties of a State's Attorney, including the use of the grand jury in any county or Baltimore City." § 9–1206. For purposes of § 10–618, therefore, the OSP stands in the shoes of the State's Attorney at whose request it undertook the instant investigation.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.*