898 A.2d 951

**Richard L. MASSEY, Jr.**

v.

**Jon P. GALLEY, Warden.**

**No. 16, Sept. Term, 2004.**

Court of Appeals of Maryland.

May 11, 2006.

Joshua N. Auerbach (Wendy N. Hess, Public Justice Center; Deborah A. Jeon, ACLU Foundation of MD, on brief), Baltimore, for petitioner.

Karl A. Pothier, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

This is an action under the Maryland Public Information Act, Maryland Code (1984, 2004 Repl. Vol.), §§ 10–611 through 10–628 of the State Government Article, by an inmate of a Maryland correctional institution who seeks access to certain public records. The sole issue before us is whether the Prisoner Litigation Act, Maryland Code (1974, 2002 Repl. Vol.), §§ 5–1001 through 5–1007 of the Courts and Judicial Proceedings Article, precludes this action on the ground that the plaintiff has not "fully exhausted all administrative remedies for resolving [his] complaint or grievance." *See* § 5–1003(a)(1) and (c) of the Courts and Judicial Proceedings Article. We shall hold that the exhaustion of administrative remedies provision of the Prisoner Litigation Act has no application to, and thus does not preclude, the statutory cause of action under the Public Information Act.

I.

The case was decided in the Circuit Court by a grant of the defendant's motion to dismiss the plaintiff's complaint. Consequently, for purposes of these appellate proceedings, the factual allegations in the complaint are accepted as true and constitute the basic facts of the case. *Benson v. State,* 389 Md. 615, 626, 887 A.2d 525, 531 (2005); *Debbas v. Nelson,* 389 Md. 364, 372, 885 A.2d 802, 807 (2005); *Doe v. Pharmacia,* 388 Md. 407, 416, 879 A.2d 1088, 1093 (2005); *Horridge v. St. Mary's County Dept. of Social Services,* 382 Md. 170, 175–176,

854 A.2d 1232, 1234 (2004); *Adamson v. Correctional Medical Services,* 359 Md. 238, 246, 753 A.2d 501, 505 (2000).

Richard L. Massey, Jr., an inmate at the Western Correctional Institution in Cumberland, Maryland, on July 16, 2002, filed in the Circuit Court for Allegany County a complaint under the Maryland Public Information Act, Code (1984, 2004 Repl. Vol.), § 10–623 of the State Government Article, against Jon P. Galley, the Warden of the Western Correctional Institution. The complaint alleged that Galley is the custodian of records at the Western Correctional Institution (WCI), and that on May 28, 2002, Massey mailed to Galley a request that Massey be allowed to inspect the following public records in Galley's custody:

"a. The contract between the State of Maryland and Prison Health services, Inc. (PHS) which is currently effective and applies to provisions of medical care at WCI.

b. Any and all records of lawful authorization for the WCI commissary to charge inmates any amount beyond costs of items sold, including specification(s) of any percentage/amount allowable.

c. Any and all records, including contracts, pertaining to the use of photocopier machines for/by inmates housed at WCI and currently effective.

d. Any and all financial records, such as monthly reports, pertaining to the photocopier cards sold by the WCI commissary to inmates, including the amount(s) and destination(s) of funds obtained by said sales during the current fiscal year."

The complaint alleged that Massey, not having received any response to his request, on June 30, 2002, again mailed to Galley a request to inspect the documents. The complaint further alleged that Massey had still not received any response to his request, that Galley had not asked for an extension of time to respond as provided by § 10–614(b)(4) of the State Government Article, and that Galley had not "temporarily denied" Massey's request pursuant to § 10–619 of the State Government Article.

The complaint went on to state that Massey, being a "person" within the meaning of the Public Information Act, has a right to inspect public records which are not exempt from inspection, that Galley "has not made a good faith effort to comply with the Act," and that Galley's "knowing and willful denial of disclosure renders his action/inaction arbitrary and capricious." Massey sought an "order[ ] that [the] records requested be produced for inspection," as well as other relief pursuant to § 10–623 of the State Government Article.[1]

---

1. The Public Information Act, in § 10–623 of the State Government Article, provides in pertinent part as follows:

"(a) *Petition authorized.*—Whenever a person or governmental unit is denied inspection of a public record, the person or governmental unit may file a complaint with the circuit court for the county where:

(1) the complainant resides or has a principal place of business; or

(2) the public record is located.

\* \* \*

"(c) *Court.*—

\* \* \*

(2) The court may examine the public record in camera to determine whether any part of it may be withheld under this Part III of this subtitle.

(3) The court may:

(i) enjoin the State, a political subdivision, or a unit, official, or employee of the State or of a political subdivision from withholding the public record;

(ii) pass an order for the production of the public record that was withheld from the complainant; and

(iii) for noncompliance with the order, punish the responsible employee for contempt.

(d) *Damages.*—(1) A defendant governmental unit is liable to the complainant for actual damages that the court considers appropriate if the court finds by clear and convincing evidence that any defendant knowingly and willfully failed to disclose or fully to disclose a public record that the complainant was entitled to inspect under this Part III of this subtitle.

(2) An official custodian is liable for actual damages that the court considers appropriate if the court finds that, after temporarily denying inspection of a public record, the official custodian failed to petition a court for an order to continue the denial.

(e) *Disciplinary action.*—(1) Whenever the court orders the production of a public record that was withheld from the applicant and, in addition, finds that the custodian acted arbitrarily or capriciously in withholding the public record, the court shall send a certified copy of its finding to the appointing authority of the custodian.

Massey's complaint in the Circuit Court did not allege, or even intimate, that he had any type of complaint or grievance concerning his confinement, or the defendant, or any other officers or personnel connected with the institution or the Maryland Division of Correction. Massey alleged that he simply wanted access to the records as a "person" who has a statutory right to such access.[2]

The defendant Galley filed a motion to dismiss the complaint on the ground that the Circuit Court "lack[ed] subject matter jurisdiction over Plaintiff's claims, as Plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit." The defendant asserted that Massey had an administrative remedy before the Inmate Grievance Office pursuant to Code (1999), §§ 10–201 through 10–210 of the Correctional Services Article. The motion to dismiss went on to state that the Prisoner Litigation Act, § 5–1003(a)(1) and (c) of the Courts and Judicial Proceedings Article, precluded this action under the Public Information Act because of Massey's failure to exhaust his Inmate Grievance Office administrative remedy.[3]

---

(2) On receipt of the statement of the court and after an appropriate investigation, the appointing authority shall take the disciplinary action that the circumstances warrant.

(f) *Costs.*—If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred."

2. The Public Information Act, in § 10–612(a) of the State Government Article, states:

"(a) *General right to information.*—All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."

3. Section 5–1003(a)(1) and (c) of the Courts and Judicial Proceedings Article provides as follows:

" **§ 5–1003. Exhaustion of administrative remedies.**

(a) *In general.*—(1) A prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance.
* * *

The Circuit Court granted the defendant Galley's motion to dismiss. Upon Massey's appeal, the Court of Special Appeals affirmed. *Massey v. Galley,* 154 Md.App. 437, 840 A.2d 183 (2003). Thereafter, this Court granted Massey's petition for a writ of certiorari. *Massey v. Galley,* 381 Md. 324, 849 A.2d 473 (2004).

## II.

This case involves three separate state statutes, and a dispute concerning the relationship among them. Thus, we shall first briefly review each of the statutes as well as the parties' arguments based upon them.

## A.

The statute creating the Inmate Grievance Office (formerly named the Inmate Grievance Commission), and providing for an adjudicatory administrative remedy and judicial review for inmate "grievances," was enacted by Ch. 210 of the Acts of 1971, and is presently codified as §§ 10–201 through 10–210 of the Correctional Services Article. For discussions of the statute, *see, e.g., Watkins v. Department of Public Safety,* 377 Md. 34, 45–47, 831 A.2d 1079, 1086–1087 (2003); *Adamson v. Correctional Medical Services, supra,* 359 Md. at 250–257, 753 A.2d at 507–511; *McCullough v. Wittner,* 314 Md. 602, 604–610, 552 A.2d 881, 882–885 (1989), and cases there cited. The administrative remedy under that statute is applicable only when an inmate, in the custody of a state correctional institution or the Commissioner of Correction, "has a grievance against an official or employee of the Division of Correction or the Patuxent Institution," § 10–206(a) of the Correctional Services Article. The Inmate Grievance Office statute also provides that "[a] court may not consider an individual's grievance that is within the jurisdiction of the Office . . .

---

(c) *Dismissal.*—A court shall dismiss a civil action if the prisoner filing the action has not completely exhausted the administrative remedies."

unless the individual has exhausted the remedies provided in this subtitle."

## B.

The Maryland Public Information Act was initially enacted by Ch. 698 of the Acts of 1970, and has been substantially revised on several occasions since that time. The Act was extensively revised by Ch. 1006 of the Acts of 1978 which provided, *inter alia,* that, in the case of denials of the right to inspect records by agencies subject to the Maryland Administrative Procedure Act, the person seeking inspection may pursue an administrative remedy under that Act, but that such administrative "remedy need not be exhausted prior to filing suit in the circuit court pursuant to this article." *IV Laws of Maryland 1978,* at 2894–2895. The provision is presently codified in § 10–622(c) of the State Government Article. Another revision of the Public Information Act, by Ch. 431 of the Acts of 1982, required the custodian of a public record, upon a written request for access to a record, to "grant the request and produce the record immediately or within a reasonable period, not to exceed 30 days, as may be required to retrieve the information," or to deny the request within 30 days. *IV Laws of Maryland 1982,* at 2957. *See* § 10–614(b)(1) of the State Government Article ("The custodian shall grant or deny the application promptly, but not to exceed 30 days after receiving the application").

Underscoring the General Assembly's concern for expedition with regard to requests under the Public Information Act, is the provision in § 10–623(c)(1) of the State Government Article that a judicial action by a person denied inspection of a public record "shall: (i) take precedence on the docket; (ii) be heard at the earliest practicable date; and (iii) be expedited in every way." Furthermore, the "defendant: (i) has the burden of sustaining a decision to deny inspection of a public record. . . ." § 10–623(b)(2)(i) of the State Government Article. *See Governor v. Washington Post,* 360 Md. 520, 545, 759 A.2d 249, 263 (2000); *Fioretti v. Maryland Board of Dental Examiners,* 351 Md. 66, 78, 716 A.2d 258, 264 (1998).

■ In applying the provisions of the Public Information Act, this Court on numerous occasions has pointed out that "[t]he presumption of the statute is in favor of disclosure." *Stromberg v. University of Maryland,* 382 Md. 151, 160, 854 A.2d 1220, 1226 (2004). *See, e.g., University System v. Baltimore Sun,* 381 Md. 79, 87–88, 95, 847 A.2d 427, 429 (2004) (The Public Information Act's provisions " 'reflect the legislative intent that the citizens of the State of Maryland be accorded *wide ranging access* to public information concerning the operation of their government.' " The Act "is to be construed in favor of permitting inspection of public records"); *Hammen v. Baltimore County Police Dept.,* 373 Md. 440, 456, 818 A.2d 1125, 1135 (2003) ("[T]he Act is to be construed in favor of disclosure. * * * The affording of broad access to public records . . . is the very purpose of the [Act]"); *Caffrey v. Dept. of Liquor Control,* 370 Md. 272, 305–306, 805 A.2d 268 (2002) ("[T]he provisions of the statute must be liberally construed . . . in order to effectuate the [Public Information Act's] broad remedial purpose") (internal quotation marks omitted); *Governor v. Washington Post, supra,* 360 Md. at 544, 759 A.2d at 262 (The " 'Maryland Public Information Act establishes a public policy and a general presumption in favor of disclosure of government or public documents,' " quoting *Kirwan v. The Diamondback,* 352 Md. 74, 80–81, 721 A.2d 196, 199 (1998)); *Office of Attorney General v. Gallagher,* 359 Md. 341, 343, 753 A.2d 1036, 1037 (2000) ("In order to carry out this right of access, the Act is to be construed in favor of disclosure"); *Fioretti v. Maryland Board of Dental Examiners, supra,* 351 Md. at 73, 716 A.2d at 262 (" '[T]he provisions of the Public Information Act reflect the legislative intent' " favoring " 'wide-ranging access to public information,' " quoting *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983)).

■ Moreover, the Maryland Public Information Act contains no limitations as to those persons entitled to inspect public records. Section 10–612(a) of the State Government Article provides that "[a]ll persons are entitled to have [such] access . . . ." Thus, an inmate in a correctional institution has a

right to inspect public records. *Attorney General v. Gallagher, supra,* 359 Md. at 343, 753 A.2d at 1037.

### C.

The Prisoner Litigation Act was enacted by Ch. 495 of the Acts of 1997. According to the first words of the Title to Ch. 495, the purpose of the Act was to impose certain requirements upon "a prisoner who files a civil action relating to the *conditions of confinement.*" (Emphasis added). The Department of Legislative Reference's file on House Bill 926 of the 1997 legislative session, which became Ch. 95, indicates that the bill as originally introduced was patterned after federal legislation concerning prisoner actions in the federal courts. Nonetheless, the bill was substantially amended in the course of its progress through the General Assembly. For a detailed review of the Prisoner Litigation Act, including its history and purpose, *see* Judge Harrell's opinion for the Court in *Adamson v. Correctional Medical Services, supra,* 359 Md. 238, 753 A.2d 501.

The Department of Fiscal Services' Fiscal Note and Analysis of House Bill 926 of the 1997 legislative session states that "[t]he bill is intended to reduce the number of civil suits filed by inmates *relating to the conditions of confinement,* especially the number of frivolous suits." (Emphasis added). The Department of Legislative Reference's file on House Bill 926 contains a list of "Examples of Frivolous State Court Inmate Litigation" at which the Bill was aimed. The entire list is as follows:

"1. *Earl Wilkins v. Secretary, Public Safety and Correctional Services,* Circuit Court for Washington County, Case No. 19682—Action to recover money for stale cigars caused by confiscation of individual humidors as contraband from cigars mailed into prison.

2. *James Hogston v. Secretary, Public Safety and Correctional Services,* Circuit Court for Anne Arundel County, Case No. C–94–11445.AA—Action relating to missing a

single meal. (Feedup occurred while inmate was in visiting room.)

3. *Robert Moore v. Secretary, Public Safety and Correctional Services,* Circuit Court for Somerset County, Case No. 95–CA–04693—Complaint that roll served with breakfast and cereal portion were too small.

4. *Gregory Marshall v. William Smith,* Circuit Court for Anne Arundel County, Case No. C–96–0122.AA—Complaint that fourth of July activities for inmates in the yard precluded inmate from taking accustomed nap.

5. *Steven Jones v. Bishop Robinson,* Circuit Court for Anne Arundel County, Case No. C–95–24019.OT—Officer's 15–minute delay in taking inmate to dentist precluded inmate from seeing dentist until one hour lunch break had ended."

For a further discussion of the type of claims which prompted the Prisoner Litigation Act, *see Adamson v. Correctional Medical Services, supra,* 359 Md. at 264–265, 753 A.2d at 515.

The first section of the Prisoner Litigation Act, setting forth the Act's "definitions," largely delineates the scope of the Act. Section 5–1001(b) defines "administrative remedy" as "any procedure for review of a prisoner's complaint or grievance," and specifically includes proceedings under the Maryland Administrative Procedure Act and the Inmate Grievance Office Act.[4] Section 5–1001(c)(1) defines a "civil action" as a legal action seeking various types of relief "that relates to or

---

4. Section 5–1001(a) and (b) of the Courts and Judicial Proceedings Article provides as follows:

" **§ 5–1001. Definitions.**

(a) *In general.*—In this subtitle the following words have the meanings indicated.

(b) *Administrative remedy.*—(1) "Administrative remedy" means any procedure for review of a prisoner's complaint or grievance, including judicial review, if available, that is provided by the Department, the Division of Correction, or any county or other municipality or political subdivision, and results in a written determination or disposition.

(2) 'Administrative remedy' includes a proceeding under Title 10, Subtitle 2 of the State Government Article or Title 10, Subtitle 2 of the Correctional Services Article."

involves a prisoner's conditions of confinement." [5] The Act in § 5–1001(d) defines "conditions of confinement" as follows:

"(d) *Conditions of confinement.*—'Conditions of confinement' means any circumstance, situation or event that involves a prisoner's custody, transportation, incarceration, or supervision."

The Prisoner Litigation Act goes on to set forth requirements concerning filing fees for civil actions brought by prisoners (§ 5–1002), certain grounds for dismissal of prisoner civil actions (§ 5–1004), sanctions for filing "frivolous actions" (§ 5–1005), and regulations with respect to compensatory and punitive damages (§ 5–1006).

As earlier indicated, the Prisoner Litigation Act's requirement which is involved in the present case is found in § 5–1003(a)(1), which provides that a "prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving" the prisoner's grievance.[6]

## D.

 In arguing that he need not attempt to exhaust any administrative remedies, including a possible remedy before

---

**5.** Section 5–1001(c) in its entirety states:

"(c) *Civil action.*—(1) 'Civil action' means a legal action seeking money damages, injunctive relief, declaratory relief, or any appeal filed in any court in the State that relates to or involves a prisoner's conditions of confinement.

(2) 'Civil action' includes:
(i) An appeal of an administrative remedy to any court;
(ii) A petition for mandamus against the prisoner's custodian, its officers or employees, or any official or employee of the Department;
(iii) Any tort claim against a custodian, the custodian's officers or employees, or any employee or official of the Department;
(iv) Any action alleging a violation of civil rights against a custodian, the custodian's officers and employees, or any official or employee of the Department; or
(v) Any appeal, application for leave to appeal, or petition for certiorari.
(3) 'Civil action' does not include a postconviction petition or petition for habeas corpus relief."

**6.** *See* n. 3, *supra.*

the Inmate Grievance Office, the petitioner Massey relies on the nature of the Public Information Act, including the nature of a legal action pursuant to that Act. Massey contends that an action under the Public Information Act does not meet the definition of "civil action" set forth in the Prisoner Litigation Act. Therefore, according to Massey, the prohibition of a "civil action" without exhausting administrative remedies is entirely inapplicable to a lawsuit authorized by the Public Information Act.

The respondent Galley broadly argues that the Prisoner Litigation Act's "exhaustion requirements apply to virtually every kind of civil matter that could be brought by a DOC [Division of Correction] inmate in State court." (Respondent's brief in this Court at 5). Galley submits that the failure to grant Massey access to the information sought constitutes a "grievance" within the meaning of the Prisoner Litigation Act. (*Id.* at 6).

Galley acknowledges that, if the Prisoner Litigation Act had not been enacted, Massey could maintain this action under the Maryland Public Information Act (MPIA) because "the MPIA permits a person to seek immediate judicial intervention when a custodian of records denies a requested inspection...." (*Id.* at 11). Nevertheless, Galley takes the position that "an irreconcilable conflict between [the] statutes exists" and that "the more recently enacted" Prisoner Litigation Act prevails and constitutes "the governing law." (*Ibid.*).

### III.

Preliminarily, it would be useful to reiterate precisely what is before us and what is not. The only issue before the Court is whether the Prisoner Litigation Act precludes a suit under the Public Information Act, by a Maryland inmate, when the inmate has not shown that he or she has exhausted administrative remedies. The failure to exhaust administrative remedies was the only basis for the motion to dismiss and was the ground on which the Circuit Court granted the motion. No issues are presented as to whether the documents sought

constitute "public records," or whether Galley is the custodian, or whether the records are exempt from inspection on any grounds under the Public Information Act, §§ 10–616 through 10–618 of the State Government Article. In fact, at oral argument before this Court, the Attorney General's Office representing Warden Galley candidly conceded that the documents sought constituted public records and that the Warden should have given them to Massey.

This Court has frequently emphasized the distinction between "any person's" right to bring an action under the Public Information Act to inspect public records and an aggrieved party's administrative or judicial action against government officials or others based upon a complaint or grievance against the defendants. For example, in *Superintendent v. Henschen,* 279 Md. 468, 369 A.2d 558 (1977), decided almost 30 years ago, the Superintendent of the Maryland State Police had revoked Mr. Henschen's permit to carry a handgun, and Henschen took an appeal to the Handgun Permit Review Board. While that administrative appeal was pending, Henschen brought an action under the Maryland Public Information Act to inspect certain documents in the Superintendent's possession, arguing that he needed them for the administrative proceeding. The Superintendent, on the other hand, relied on an exception in the Public Information Act. This Court pointed out that the two entirely different actions should not be confused, stating (279 Md. at 473–474, 369 A.2d at 561, footnotes omitted):

"[I]t is desirable to emphasize just what is before us for decision in this case and what is not. This is an action under the Public Information Act and not a proceeding to review an administrative decision revoking a handgun permit. The Public Information Act provides that, subject to certain enumerated exceptions, 'the custodian of any public records shall allow *any person* the right of inspection of such records....' (Art. 76A, § 3(a), emphasis supplied.) The general right of inspection is not limited to a 'person aggrieved' or 'person in interest.' The term 'person' is broadly defined to include 'any natural person, corporation, partnership, firm or association.' (Art. 76A, § 1(g).) Con-

sequently, if the Superintendent's refusal to disclose in this case is not justified by one of the Public Information Act's exceptions, Mr. Henschen would be entitled to the information regardless of the pendency of an appeal to the Handgun Permit Review Board. Moreover, the applicability of the exception upon which the Superintendent relies in this case, the exception for records of investigations (§ 3(b)(i)), does not at all depend upon whether the records would be available to a party in litigation with the agency. Thus, whether or not due process considerations might make the records available to Mr. Henschen as a party in the administrative proceeding before the Handgun Permit Review Board does not determine whether they are available under the Public Information Act.

"On the other hand, a ruling that the records need not be disclosed under the Public Information Act, because of the exception in § 3(b)(i), does not determine whether Mr. Henschen may be entitled to see them in connection with this Handgun Permit Review Board proceeding. A particular document may not be available to 'any person' under the Public Information Act in light of that Act's exceptions, but procedural due process requirements may yet make that same document available to a party, or unavailable for use against a party, in an administrative or judicial proceeding.

\* \* \*

"The issue in this case, therefore, is not whether the records here involved may be used against Mr. Henschen in the Handgun Permit Review Board proceeding or may be available to him in that proceeding. The issue is whether 'any person' would be entitled to inspect the records under the Public Information Act...."

See also, e.g., Hammen v. Baltimore Police, supra, 373 Md. at 452–457, 818 A.2d at 1132–1135 ("The affording of broad access to public records by citizens is the very purpose of the MPIA.... Such situations are very different from [other] civil actions").

 It is true that one might seek access to a public record in order use the record in a pending grievance or other proceeding involving a public official or agency, or use the public record to determine whether to institute a grievance proceeding or other action. Nevertheless, as pointed out in *Henschen* and other cases, that is not the purpose of or an essential characteristic of an action under the Public Information Act. A person may seek access to a public record simply out of curiosity. As previously noted, the *purpose* of the Act is to provide any person with " 'wide-ranging access to public information concerning the operation of government,' " *Fioretti v. Maryland Board of Dental Examiners, supra,* 351 Md. at 73, 716 A.2d at 262.

From the standpoint of the Public Information Act, this case would be no different if a non-inmate friend or relative of Massey's had sought to inspect the same records and later intended to disclose the information to Massey, or if a stranger had sought the records out of mere curiosity. In these situations, no "exhaustion" issue could be raised. When the exceptions in the Public Information Act are not involved, the focus of the Act is not upon the person seeking access to the public record. Instead, the Act is aimed at the custodian of the record, imposing upon the custodian the duty of disclosure.

 Another problem with the respondent's focus upon the status of the plaintiff in a Public Information Act proceeding, and the respondent's "exhaustion" argument, is that an inmate may seek records which are not within the custody of the Division of Correction or the Department of Public Safety and Correctional Services. *See, e.g., Attorney General v. Gallagher, supra,* 359 Md. 341, 753 A.2d 1036 (An inmate sought records which were in the custody of the Attorney General of Maryland). The Inmate Grievance Office and the Secretary of Public Safety and Correctional Services *might* have jurisdiction over an inmate's request under the Public Information Act to require that a custodian within the Division of Correction or the Patuxent Institution permit the inspection of public records. *See* § 10–206(a) of the Correctional Services Article.

It is clear, however, that the Inmate Grievance Office and the Secretary of Public Safety and Correctional Services would have no authority to order that a custodian outside of the Department of Public Safety and Correctional Services permit access to records. *Adamson v. Correctional Medical Services, supra,* 359 Md. at 269, 753 A.2d at 517 ("We cannot require the exhaustion of an administrative remedy process that is inapplicable to a prisoner's alleged grievance").

■ Finally, we reject the respondent Galley's argument that there exists "an irreconcilable conflict" between the Public Information Act and the Prisoner Litigation act, and that the Prisoner Litigation Act, as the later enacted statute, prevails. There is no such conflict.[7] As discussed above, the Public Information Act is not aimed at "grievances" but is concerned with any person's access to most public records regardless of the person's reason for desiring such access. The Prisoner Litigation Act on the other hand, like the earlier Inmate Grievance Office Act, is concerned with inmate "grievances."

The exhaustion requirement of the Prisoner Litigation Act precludes a "civil action," as defined in that Act, if a prisoner has not exhausted administrative remedies for resolving the prisoner's "grievance." *See* § 5–1003(a)(1) of the Courts and Judicial Proceedings Article. "Administrative remedy," within the meaning of the Act, "means any procedure for review of a prisoner's complaint or grievance," § 5–1001(b). "Civil Action" as defined in the Prisoner Litigation Act "means a legal action . . . that relates to or involves a prisoner's *conditions of confinement,*" § 5–1001(c), emphasis added.

Under the plain and commonly understood meaning of the language, a mere request to inspect a public record does *not*

---

7. Even if the two statutes were "seemingly contradictory," it is a settled principle that this Court should attempt to "harmonize" them, "giving meaning and effect to all parts of the statutory language and refraining from interpretations that render . . . [them] contradictory." *Board of Physician Quality Assurance v. Mullan,* 381 Md. 157, 168, 848 A.2d 642, 649 (2004), and cases there cited.

relate to or involve a prisoner's "conditions of confinement." Nothing in the language of the statute or its legislative history suggests that the statute might encompass a request for public information or the denial of such request.

The respondent would have the Prisoner Litigation Act's exhaustion requirement apply to any judicial action brought by a Maryland prisoner. In *Adamson v. Correctional Medical Services, supra*, 359 Md. at 269, 753 A.2d at 517, although not involving the Public Information Act, this Court rejected a similar sweeping interpretation of the Prisoner Litigation Act, stating:

> "Nothing in the statutes would lend the slightest hint that the legislature intended the statute's exhaustion requirement be as all encompassing as Respondent alleges."

The same statement is applicable to the respondent's argument in the case at bar.

This action, authorized by the Maryland Public Information act, should not have been dismissed on the ground that the plaintiff had failed to exhaust administrative remedies.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*