59 A.3d 1037

MARYLAND DEPARTMENT OF STATE POLICE

v.

MARYLAND STATE CONFERENCE OF NAACP BRANCHES.

No. 41, Sept. Term, 2010.

Court of Appeals of Maryland.

Jan. 24, 2013.

Steven M. Sullivan, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Seth A. Rosenthal (Brian L. Schwalb of Venable LLP, Washington, DC; Deborah A. Jeon of the ACLU Foundation of Maryland, Baltimore, MD), on brief, for respondent.

Byron L. Warnken, James M. Nichols, Warnken, LLC, Towson, MD, for amicus curiae brief of the Maryland Trooper's Association on Behalf of Petitioner.

David S. Wachen, Shulman Rogers Gandal Pordy & Ecker, P.A., Potomac, MD, for amici curiae brief of the Reporters Committee for Freedom of the Press and Thirteen News Media Organizations in Support of Respondent.

John Payton, Director–Counsel, Debo P. Adegbile, Associate Director–Counsel, Christina A. Swarns, Johanna B. Steinberg, Jin Hee Lee, Vincent M. Southerland, NAACP Legal Defense and Educational Fund, Inc., New York, New York, Joshua I. Civin, NAACP Legal Defense and Educational Fund, Inc., Washington, DC, for amicus curiae NAACP Legal Defense and Educational Fund, Inc. in Support of Respondent–Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned) JJ.

JOHN C. ELDRIDGE (Retired, Specially Assigned) J.

The Maryland Public Information Act provides that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." Maryland Code (1984, 2009 Repl.Vol., 2012 Supp.), § 10–612(a) of the State Government Article. While the Public Information Act makes access to government information generally available to the public, it also shields some government information from disclosure. The present case involves the exemption from disclosure in § 10–616(i) of the Public Information Act, which requires that custodians of

---

* Judge Murphy, now retired, participated in the hearing and conference of this case while an active member of the court, but did not participate in the decision or adoption of this opinion.

records "shall deny inspection of a personnel record of an individual."

I.

The relevant events in this case commenced when the Maryland State Conference of NAACP Branches (hereafter "NAACP"), pursuant to the Public Information Act, requested certain records from the Maryland State Police Department (hereafter the "State Police"). The NAACP claimed that the requested records would allow it to verify whether the State Police had been complying with its obligations under a federal court consent order designed to ensure that State Police officers did not rely on racial attributes when deciding whether to conduct a traffic stop and search.[1] The State Police produced many of the documents requested by the NAACP but declined to produce a few specified categories of requested records.[2]

---

**1.** The NAACP had filed several complaints against the State Police for racial profiling during traffic stops. In a case giving rise to the present controversy, the State Police entered into a consent agreement with the NAACP, which was incorporated in an order of the United States District Court for the District of Maryland. The consent order obligated the State Police to provide the NAACP with quarterly reports containing detailed information on the number, nature, location and disposition of complaints alleging racial profiling. Some of the documents requested by the NAACP in the present case were at issue in that federal case.

On October 15, 2008, the United States District Court for the District of Maryland issued a ruling clarifying that, under the 2003 consent order, the State Police were required to provide the NAACP with redacted copies of racial profiling complaints made. The State Police complied with that order. In the case before this Court, the NAACP has not argued that the federal district court order gave the NAACP the right to inspect the records at issue in this case, namely, the investigative files related to those complaints.

**2.** The Opinion and Order of the Circuit Court for Baltimore County noted that the NAACP originally requested twelve categories of records. The State Police complied with the request as to seven of those categories, but denied the request as to five. Before the Circuit Court, the NAACP continued to contest the State Police's denial of three of the categories. Only one category of requests was at issue when the case reached this Court.

At issue in this case is the refusal of the State Police to provide the documents requested in item number 6 of the NAACP's request. In item number 6, the NAACP asked to inspect and copy:

"6. All documents obtained or created in connection with any complaint of racial profiling, including but not limited to any complaint filed with or investigated by the MSP's [Maryland State Police's] Department of Internal Affairs, including all complaints filed, all documents collected or created during the investigation of each complaint, and all documents reflecting the conclusion of each investigation."

The State Police replied that the records requested in item 6 "constitute portions of personnel records" and that, "pursuant to Section 10–616(i)," the State Police "den[ied] an inspection of" those records. Section 10–616(i) states:

"(i) *Personnel records.*—(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.

(2) A custodian shall permit inspection by:

(i) the person in interest; or

(ii) an elected or appointed official who supervises the work of the individual."

Although the State Police refused to disclose further records pursuant to NAACP's request number 6, pursuant to the earlier federal consent decree, the NAACP did receive regular reports from the State Police detailing the number and status of all racial profiling complaints, including the complaint's ultimate disposition. The reports, however, did not contain information concerning the State Police's own internal investigations of these complaints.

On May 2, 2007, the NAACP wrote a letter to the State Police stating that the Maryland Public Information Act should "be construed in favor of permitting inspection of a public record," and clarifying that the NAACP was not seeking "the private, confidential personal information of particular [State Police] troopers," but rather was focusing on informa-

tion related to how the State Police "at the institutional and management levels, ha[ve] responded to racial profiling complaints." In this respect, the NAACP said that it would be willing to accept redacted documents relating to request number 6, if each trooper was given "a unique number or code" so that the NAACP could "ascertain whether a particular trooper is referenced in more than one complaint ... without divulging that particular trooper's identity." The State Police, in a letter five days later, rejected the NAACP's request once again and reiterated its position that the records were exempt from disclosure under § 10–616(i) of the Public Information Act.

Subsequently, the NAACP commenced the present action by filing in the Circuit Court for Baltimore County a complaint alleging that the State Police had violated the Maryland Public Information Act by refusing to allow the NAACP to inspect and copy the requested records. The NAACP sought, *inter alia,* a declaratory judgment that the State Police violated the Public Information Act and an order requiring the State Police to allow inspection and copying of the records. In its complaint, the NAACP stated that its right to access the "requested information is especially significant where, as here, the [State Police's] obligation to follow the law—that is, its obligation to act in a race-neutral manner—is compelled not only by the state and federal Constitutions, but by a still-extant, well-known federal court Consent Decree."

Both parties filed motions for summary judgment which were denied. Subsequently, the Circuit Judge heard oral arguments from both parties and thereafter ordered the State Police to submit the disputed records to the Judge for his *in camera* review. After reviewing many of the disputed documents *in camera,* the Circuit Judge determined that "these are the kinds of files that are personnel in nature and represent a thrust against an individual trooper." He decided, however, that if information was redacted from the records so that "you don't know who the trooper was, it really can't be

personnel in nature, and it can't be an invasion of a trooper's privacy." The Judge continued:

"I did not feel it appropriate ... to just claim them all exempt and say NAACP, you're not getting any of it. I did not feel it fair to say you're getting all of them and risk privacy rights of the troopers being invaded and all kinds of other problems.

"I believe the fair approach is to find that middle ground which is what I'm going to do. * * * I honestly feel that when the NAACP sees these documents, they will not want a lion's share of them for various reasons."

The Circuit Court issued a written interlocutory order stating that the "[r]ecords responsive to Request No. 6 of Plaintiff's Maryland Public Information Act ('MPIA') request ... constitute personnel records under the MPIA," but that they should "be disclosed provided that the names and any identification number of individual Maryland State Police ... troopers and the names and identifying information of any complainants are redacted from such records." The court ordered that the State Police "shall provide Plaintiff with such records," with the above-described redactions. The Circuit Court stated at one point that, "[i]f you don't know who the trooper was, it really can't be personnel in nature." The court's order stated that other issues in the case would be resolved after another hearing.

Because of the volume of documents encompassed by the NAACP's request, the Circuit Court order also instructed the parties on a procedure for redaction. The court ordered the State Police to make the documents available to the NAACP, for an "Attorneys' Eyes Only" inspection. The NAACP was to designate three attorneys who would have 120 days to review the unredacted records. The court stated that "the documents can be provided in a safe place, and if the State Police wants to have somebody there monitoring them, ... they can certainly do so...." At the end of their inspection of the records, the attorneys were to indicate which records they wanted copied, and the State Police were to produce copies of

those records with all identifying information redacted.[3]

The State Police appealed to the Court of Special Appeals, and the Circuit Court granted a stay of its order pending appeal. A three-judge panel of the Court of Special Appeals initially heard oral argument, but, before an opinion was issued, a rehearing was held before ten Court of Special Appeals' judges sitting *en banc*.[4] In the Court of Special Appeals, the State Police argued that the Circuit Court erred "by ordering release of all of the requested ... records with redaction of names and identification" when the Circuit Court had determined that the documents constituted "personnel records" which § 10–616(i) of the Public Information Act exempts from disclosure.

A majority of the Court of Special Appeals, characterizing the records sought by the NAACP as "investigative files concerning ... racial profiling complaints," vacated the "portion" of the Circuit Court's order stating that the requested documents were "personnel records" of individuals within the meaning of § 10–616(i) of the Public Information Act. The intermediate appellate court affirmed the remainder of the

---

**3.** The next to last paragraph of the Circuit Court's order provided as follows:

"The Court reserves ruling on Plaintiff's remaining claims for relief, including but not limited to Plaintiff's claim that the fees charged by Defendant for gathering and reproducing the records responsive to Plaintiff's MPIA [Maryland Public Information Act] Request should be waived, and Plaintiff's claim that the fees charged by Defendant are in excess of what the MPIA permits. After receiving notice from the parties that the redacted records have been produced to Plaintiff, the Court shall schedule a prompt hearing, including if necessary an evidentiary hearing, to resolve such claims."

As to the appealability of the Circuit Court's interlocutory order, *see State Prosecutor v. Judicial Watch*, 356 Md. 118, 126–128, 737 A.2d 592, 597 (1999) ("[A]n order under this [Public Information] Act," requiring a governmental custodian to disclose public records, "is an injunction"); Maryland Code (1974, 2006 Repl.Vol.), § 12–303(3)(i) of the Courts and Judicial Proceedings Article (An interlocutory order granting an injunction is appealable).

**4.** While ten judges heard the case, one of them subsequently became ill, and only nine judges participated in the conference and decision.

Circuit Court's order. *State Police v. NAACP,* 190 Md.App. 359, 367, 381, 988 A.2d 1075, 1079, 1087 (2010).

The Court of Special Appeals' majority opinion, after setting forth the facts of the case, was almost entirely devoted to the issue of whether the requested records, *without any redactions,* were "personnel records" of individuals and thus exempt from disclosure under § 10–616(i) of the Public Information Act. The intermediate appellate court held, for several reasons, that the unredacted records were not exempt from disclosure under § 10–616(i). *See State Police v. NAACP, supra,* 190 Md.App. at 367–378, 988 A.2d at 1079–1086.

The NAACP had argued before the Court of Special Appeals that the issue in the case was whether the *redacted* records should be disclosed because the NAACP was not seeking unredacted records and was agreeable to the redaction. The NAACP pointed out that § 10–614(b)(3)(iii) provides that a "custodian who denies the application shall: * * * (iii) permit inspection of any part of the record that is subject to inspection and is reasonably severable." In rejecting this argument, the Court of Special Appeals referred to the matter of redaction as a "suggestion" by the NAACP, and said that the State Police did not accept the "suggestion." *State Police v. NAACP, supra,* 190 Md.App. at 380, 988 A.2d at 1087. Alternatively, the Court of Special Appeals held that, "if the records were in fact 'personnel record[s] of an individual,' they would not be transformed into another category of records by simply redacting names from them." *Ibid.*

In support of its holding that the investigatory files at issue do not constitute "personnel record[s] of an individual" under § 10–616(i), the Court of Special Appeals reasoned that the requested files "do not involve private matters concerning ... the trooper's private life," but, "[i]nstead, such complaints involve events occurring while the trooper is on duty and engaged in public service." (190 Md.App. at 368, 988 A.2d at 1080). The Court of Special Appeals continued (*ibid.*):

"[T]he files at issue concern public actions by agents of the State concerning affairs of government, which are exactly

the types of material the Act was designed to allow the public to see. *A.S. Abell, supra,* 297 Md. at 32 [464 A.2d 1068]."

The Court of Special Appeals also emphasized that the "common sense meaning of the term 'personnel record[s] of an individual' would not include investigative files of a police department concerning racial profiling." 190 Md.App. at 372, 988 A.2d at 1082–1083.

In addition, the Court of Special Appeals took the position that the requested records were actually "records of investigations conducted by a . . . police department" within the meaning of §§ 10–618(f)(i) of the Public Information Act, and, as such, the State Police could have denied inspection of the records on that ground.[5] The Court of Special Appeals pointed out that the State Police could not in the present judicial action rely on § 10–618(f) because, in denying the NAACP's

---

**5.** Section 10–618 provides in pertinent part as follows:

"**§ 10–618. Permissible denials.**

(a) *In general.*—Unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part, as provided in this section.

\*      \*      \*

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by . . . a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual."

request, the State Police did not rely on § 10–618(f) but relied exclusively on § 10–616(i). The Court of Special Appeals, however, did rely on § 10–618(f) in holding that the requested records were not "personnel record[s] of an individual" within the meaning of § 10–616(i) of the Public Information Act. The appellate court expressed the view that records cannot be covered by both § 10–618(f) and § 10–616(i). At one point, the Court of Special Appeals stated (190 Md.App. at 374–375, 988 A.2d at 1084):

"The records at issue clearly do not *directly* pertain to discipline 'of an existing or former employee' but even if they did, to be exempt, the MSP [State Police] would have to show that the investigative records exception was inapplicable. *See* section 10–618(a) and (f)."

At another place in its majority opinion, the Court of Special Appeals stated (190 Md.App. at 370, 988 A.2d at 1081):

"Because the records the NAACP seeks in this case fit precisely within the class of records governed by section 10–618(f), we see no reason why its provision should not control, rather than section 10–616(i) of the Act, upon which the MSP relies."

The Court of Special Appeals also discussed two opinions by this Court dealing with the "personnel record" exemption in § 10–616(i), namely *Kirwan v. The Diamondback,* 352 Md. 74, 721 A.2d 196 (1998), and *Governor v. Washington Post,* 360 Md. 520, 546–548, 759 A.2d 249, 263 (2000). The appellate court concluded that the State Police records sought by the NAACP do not constitute "personnel record[s] of an individual" under the principles set forth in the *Kirwan* and *Washington Post* cases.

The State Police filed in this Court a petition for a writ of certiorari, contending that the requested investigative records were "personnel records" within the meaning of § 10–616(i) of the Maryland Public Information Act and that the Circuit Court erred by ordering the disclosure of the redacted records. The NAACP did not file a cross-petition for a writ of certiorari. This Court granted the certiorari petition, *Mary-*

*land State Police v. NAACP*, 415 Md. 38, 997 A.2d 789 (2010), and we shall affirm the Court of Special Appeals' judgment, although on different grounds than those relied upon by the Court of Special Appeals.

## II.

In numerous cases, this Court has reiterated that "the provisions of the Public Information Act reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *Kirwan v. The Diamondback, supra,* 352 Md. at 81, 721 A.2d at 199 (internal quotation marks omitted). *See also, e.g., Montgomery County v. Shropshire,* 420 Md. 362, 375, 23 A.3d 205, 213 (2011); *Ireland v. Shearin,* 417 Md. 401, 408, 10 A.3d 754, 758 (2010); *University System v. Baltimore Sun,* 381 Md. 79, 87–88, 847 A.2d 427, 432 (2004); *Fioretti v. Maryland State Board of Dental Examiners,* 351 Md. 66, 73, 716 A.2d 258, 262 (1998); *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). We have also held that, " 'in order to effectuate the Public Information Act's broad remedial purpose,' " the Act " 'must be liberally construed.' " *Kirwan, supra,* 352 Md. at 81, 721 A.2d at 199, *quoting A.S. Abell Publishing Co. v. Mezzanote, supra,* 297 Md. at 32, 464 A.2d at 1071.

The "well-established general principles governing the interpretation and application of" the Act create " 'a public policy and a general presumption in favor of disclosure of government or public documents.' " *Governor v. Washington Post Co., supra,* 360 Md. at 544, 759 A.2d at 262. *See also, e.g., Massey v. Galley,* 392 Md. 634, 642, 898 A.2d 951, 955–956 (2006) (The " 'presumption of the statute is in favor of disclosure,' " quoting *Stromberg v. University of Maryland,* 382 Md. 151, 160, 854 A.2d 1220, 1226 (2004)); *Kirwan,* 352 Md. at 84, 721 A.2d at 200 ("the statute should be interpreted to favor disclosure"); *Office of the Attorney General v. Gallagher,* 359 Md. 341, 343, 753 A.2d 1036, 1037 (2000); ("the Act is to be construed in favor of disclosure"); *State Prosecutor v. Judi-*

*cial Watch,* 356 Md. 118, 134, 737 A.2d 592, 601 (1999); *Baltimore v. Maryland Committee,* 329 Md. 78, 80–81, 617 A.2d 1040, 1041 (1993); *Cranford v. Montgomery County,* 300 Md. 759, 771, 481 A.2d 221, 227 (1984); *A.S. Abell Publishing Co. v. Mezzanote, supra,* 297 Md. at 32, 464 A.2d at 1071; *Superintendent v. Henschen,* 279 Md. 468, 473, 369 A.2d 558, 561 (1977). Furthermore, the defendant-custodian "has the burden of sustaining a decision to deny inspection of a public record." § 10–623(b)(2)(i) of the Act. The Public Information Act's strong preference for public access to government documents must be considered whenever a court is applying the particular provisions of the statute.

Turning to the case at bar, we agree with the Court of Special Appeals' judgment, although we disagree with some of the intermediate appellate court's reasoning. Moreover, we perceive the issues somewhat differently than did the Court of Special Appeals.

### A.

As previously mentioned, one of the reasons given by the Court of Special Appeals for holding that the requested records were not personnel records within the meaning of § 10–616(i) was that they were records of investigations within the meaning of § 10–618(f). The Court of Special Appeals seemed to be of the view that particular records could not be exempt under both sections and that, if the records fell within § 10–618(f), they could not be exempt from disclosure under § 10–616(i).

In *Attorney General v. Gallagher, supra,* 359 Md. at 348–351, 753 A.2d at 1040–1041, the Court of Special Appeals had expressed a similar view concerning the relationship among the Public Information Act's exemptions from disclosure. This Court in *Gallagher,* however, flatly rejected the Court of Special Appeals' position. In setting out the arguments and the Court of Special Appeals' holding, the *Gallagher* opinion stated (359 Md. at 347–348, 753 A.2d at 1040):

"The petitioner argued, and the Circuit Court held, that several documents were exempt from disclosure under § 10–615, as 'privileged.' They included documents embodying 'attorney mental impressions' or attorney 'work product.' According to the respondent's argument and the holding of the Court of Special Appeals, privileged documents, including attorney work product, contained within an investigatory file, would have to be disclosed to a person in interest if none of the seven exemptions under § 10–618(f)(2) were applicable. The Court of Special Appeals' holding would allow litigants to have access to records in an investigatory file which disclose the 'mental impressions, conclusions, opinions, or legal theories of an attorney.'"

We responded in *Gallagher* as follows (359 Md. at 348, 753 A.2d at 1040):

"[I]f this Court were to adopt the intermediate appellate court's holding in this case, § 10–618(f)(2) would also override the exemptions for 'confidential, commercial information' (§ 10–617(d)(2)), 'confidential financial information' (§ 10–617(d)(3)), 'information about the finances of an individual' (§ 10–617(f)), and 'interagency or intra-agency letter[s] or memorand[a] that would not be available by law to a private party in litigation with the unit' (§ 10–618(b)). Nothing in the language or history of the Public Information Act supports the view that, when records are contained within an investigatory file, § 10–618(f)(2) displaces all other exemptions in the statute."

This Court in *Gallagher* concluded by reiterating its "holding that § 10–618(f) does not overrule other exemptions under the Act" and that, "if any exemption under §§ 10–615, 10–616, or 10–617 is applicable to a particular record, then it must be withheld" (359 Md. at 354–355, 753 A.2d at 1043–1044). *See Montgomery County v. Shropshire, supra,* 420 Md. at 381–382, 23 A.3d at 216–217 (Records of a police department internal affairs investigation into certain conduct of two officers were requested under the Public Information Act, and this Court held that the records were exempt from disclosure as personnel records pursuant to § 10–616(i). The Court in

*Shropshire* distinguished the Court of Special Appeals' opinion in the case now before us). *See also State Police v. NAACP, supra,* 190 Md.App. at 390, 988 A.2d at 1093 (Judge Kehoe, in a concurring opinion joined by Judge Zarnoch, and relying on *Gallagher,* disagreed with the majority opinion in the present case).

Consequently, the fact that the requested records in this case might have been covered by § 10–618(f) would not preclude their status as personnel records covered by § 10–616(i).

## B.

As earlier pointed out, the majority opinion of the Court of Special Appeals in this case rejected the NAACP's argument that the case concerned redacted records and rejected the NAACP's reliance upon § 10–614(b)(3)(iii) of the Act. The intermediate appellate court stated that the State Police "did not accept the NAACP's suggestion that the records be redacted," *State Police v. NAACP, supra,* 190 Md.App. at 380, 988 A.2d at 1087. The Court of Special Appeals' majority opinion treated the principal issue in the case to be whether the *unredacted* records were exempt from disclosure under § 10–616(i), and the majority concluded that such records were not exempt from disclosure. *But cf. State Police v. NAACP, supra,* 190 Md.App. at 390–393, 988 A.2d at 1093–1094 (Kehoe, J., joined by Zarnoch, J., taking the position that the unredacted records were exempt from disclosure under § 10–616(i), but that the redacted records should be disclosed).

Redaction of the records was *not* simply a "suggestion" by the NAACP. Instead, the requirement that the records be redacted was the principal part of the Circuit Court's order from which the present appeals were taken, and which was affirmed by the Court of Special Appeals. In fact, most of the Circuit Court's four-page order dealt with redaction and the procedures for redacting the records. The court's order determined that the requested records

"constitute personnel records under the MPIA, however, the Court finds that they may be disclosed provided that the

names and any identification number of individual Maryland State Police ('MSP') troopers and the names and identifying information of any complainants are redacted from such records. Accordingly, pursuant to the MPIA, Defendant shall provide Plaintiff with such records, redacting the names and any identification numbers of individual Maryland State Police ('MSP') troopers and the names and any identifying information of any complainants. The process for providing Plaintiff with these redacted records is set forth in paragraphs 2–6 below."

The Circuit Court's appealable interlocutory order, which is the order affirmed by the Court of Special Appeals, was an order enjoining the parties to redact the requested records and turn over the redacted records to the NAACP. While the Circuit Court's order contained a few words saying that the records "constitute personnel records," there was no injunction or other court action with regard to unredacted records. Because no appealable Circuit Court order concerns the disclosure of unredacted records, that issue was not before the Court of Special Appeals and is not before this Court. Consequently, we have no occasion to express any opinion in this case as to whether the unredacted records would be exempt from disclosure under § 10–616(i) of the Public Information Act.

### C.

██ The State Police's argument in this Court, for the most part, is that the *unredacted* records are exempt from disclosure. Nevertheless, the State Police briefly argue that the redacted records are also exempt from disclosure under § 10–616(i). The State Police contend that "[t]here is no provision for redaction or partial disclosure to be found in either § 10–616 as a whole or specifically within § 10–616(i)." (Petitioner's opening brief at 48). According to the State Police, "[t]he plain, unambiguous prohibition in § 10–616(i) cannot be overcome or evaded by invoking other sections of the [Act], including the provisions of § 10–614(b)(3)(iii)." (Petitioner's reply brief at 20). The Court of Special Appeals, after stating

that redaction was only a "suggestion" by the NAACP, alternatively stated that, "if the records were in fact 'personnel record[s] of an individual,' they would not be transformed into another category of records by simply redacting names from them." *State Police v. NAACP, supra,* 190 Md.App. at 380, 988 A.2d at 1087.

The above-summarized arguments are not persuasive. After the names of State Police troopers, the names of complainants, and all identifying information are redacted, the records clearly do not fall within the statutory language of "record[s] of an individual." (§ 10–616(i)). There would be no "individual" identified in the redacted records.

Moreover, § 10–616(a)(i) of the Public Information Act provides as follows (emphasis added):

"(a) *In general.*—Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.

\*       \*       \*

(i) *Personnel records.*—(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information."

Section 10–614(b)(3)(iii) of the Act is a statutory provision "otherwise provided by law." It states:

"(3) A custodian who denies the application shall:

\*       \*       \*

(iii) permit inspection of any part of the record that is subject to inspection and is reasonably severable."

The plain language of §§ 10–616(a) and 10–614(b)(3)(iii) authorizes redactions so that the applicant can receive portions of an exempt record which are severable and the receipt of which does not violate the substance of the exemption.

■ If a record falling within one of the Act's exemptions is redacted in accordance with § 10–614(b)(3)(iii) and, if it is still exempt as argued by the State Police and held by the Court of Special Appeals, no effect whatsoever would be given to § 10–

614(b)(3)(iii). The State Police's and the Court of Special Appeals' position would largely render § 10–614(b)(3)(iii) nugatory. Nevertheless, "it is a settled principle of statutory . . . construction that a provision should not be construed so as to render it nugatory," *Bienkowski v. Brooks*, 386 Md. 516, 548, 873 A.2d 1122, 1141 (2005). *See Fisher v. Eastern Correctional*, 425 Md. 699, 709–710, 43 A.3d 338, 342–343 (2012); *Stachowski v. State*, 416 Md. 276, 297–298, 6 A.3d 907, 919 (2010); *Della Ratta v. Dyas*, 414 Md. 556, 570, 996 A.2d 382, 390 (2010); *Allen v. Dackman*, 413 Md. 132, 148, 991 A.2d 1216, 1225 (2010). Furthermore, as shown by this Court's opinions, § 10–614(b)(3)(iii) is not nugatory. *See Governor v. Washington Post, supra*, 360 Md. at 542–550, 759 A.2d at 261–266 (This Court directed that there should be redactions in various public records sought by the applicant); *Cranford v. Montgomery County, supra*, 300 Md. at 774, 780–781, 481 A.2d at 228–229, 232.

■ The Circuit Court was fully warranted in ordering redactions in the requested State Police records, and, for this reason, the Circuit Court's order should be upheld.[6]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*

---

6. The State Police, in addition to the arguments dealt with in this opinion, challenge the redaction procedure under the Circuit Court's order. Our examination of the record fails to show that this issue was raised in the trial court. Consequently, we shall not consider it. Maryland Rule 8–131.